**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Reem J. Bello, State Bar No. 198840
rbello@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Debtor
and Debtor-in-Possession,
Coastal International, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>COASTAL INTERNATIONAL, INC., a Nevada corporation,<br><br>           Debtor and Debtor-in-Possession.<br><br>AMERICAN HOME ASSURANCE COMPANY,<br><br>           Plaintiff,<br><br>v.<br><br>COASTAL INTERNATIONAL, INC.,<br><br>           Defendant. | Case No. 19-31326-HLB<br><br>Chapter 11<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF JEFFREY I. GOLDEN AND ADAM MEISLIK IN SUPPORT THEREOF**<br><br>**Date:**      **April 30, 2020**<br>**Time:**      **2:00 p.m.**<br>**Place:**     **450 Golden Gate Avenue**<br>               **Courtroom 19**<br>               **San Francisco, CA 94102**<br>**Judge:**     **Hon. Hannah L. Blumenstiel** |

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1269382.1

OPPOSITION

Coastal International, Inc. ("Defendant" or "Debtor"), defendant in the above captioned adversary proceeding and debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 bankruptcy case ("Case"), hereby files this *Opposition* ("Opposition") *to Plaintiff's Motion for Preliminary Injunction* ( "Motion"). In support of the Opposition, the Debtor submits the following memorandum of points and authorities and the declarations of Jeffrey I. Golden ("Golden Declaration") and Adam Meislik ("Meislik Declaration") and respectfully represents as follows:

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

In an attempt to increase pressure on the Debtor and Bruce Green in particular, American Home Assurance Company ("AHAC") brought the Motion seeking a preliminary injunction against the Debtor from paying any compensation to its Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and President, Bruce Green ("Green"). AHAC's assertions that Debtor sought to make "secret" payments to Green are unfounded. To the contrary, upon transfer of the Case to the Northern District, Debtor reached out to the Office of the United States Trustee in the Northern District of California to discuss proper procedure for disclosing the compensation to be paid to Green. As a result, Debtor followed proper procedure for disclosing the compensation to Green in the Debtor's monthly operating reports. Moreover, the compensation to Green was disclosed to the Committee of Unsecured Creditors ("Committee"), of which AHAC is a member. Compensation payments to Green are allowed pursuant to the Bankruptcy Code. The preliminary injunction should not be granted as AHAC has not, and cannot, demonstrate any merit to its claim or show irreparable harm as a result of the salary payments to Green.

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## II. FACTUAL BACKGROUND

### A. The Bankruptcy Filing

On September 15, 2019 (the "Petition Date"), Debtor commenced the Case under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division. The Debtor continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. *See* ¶ 2 of declaration of Jeffrey I. Golden attached hereto ("Golden Declaration").

### B. Transfer of Debtor's Case to the Northern District

On December 30, 2019, this case was transferred from the Central District of California to the Northern District of California. *See* ¶ 3 of Golden Declaration.

### C. AHAC's Adversary Proceeding

AHAC commenced an adversary proceeding against the Debtor on April 2, 2020, commencing case number 20-03009 ("Adversary Proceeding") seeking *inter alia* disgorgement of any and all amounts paid to Green and an injunction against the Debtor. On April 2, 2020, AHAC filed the Motion, seeking a preliminary injunction against the Debtor. *See* ¶ 4 of Golden Declaration.

### D. Debtor's Payments to Green

The Debtor is a Nevada corporation formed in 1984, which provides trade show installation and dismantling services in the exhibit and event industry. The Debtor has continued to operate post-petition. Debtor's monthly operating reports indicates that the Debtor has continued to operate successfully post-petition. *See* ¶ 5 of Golden Declaration.

From the Petition Date through December 31, 2019, Green voluntarily chose not to accept any insider compensation. After the bankruptcy case was transferred to the Northern District, Green requested to resume receiving a salary. *See* ¶ 6 of Golden Declaration. The salary Green sought to be paid was less than his pre-petition salary. The Debtor, being fully aware of the requirement of filing a Notice of Insider Compensation in the Bankruptcy Court for the Central District of California reviewed the local rules for the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   Bankruptcy Court for the Northern District of California and did not find a similar

2   procedure. As a result, the Debtor contacted the Office of the United States Trustee for

3   the Northern District of California to discuss the disclosure of insider compensation. *See*

4   ¶ 7 of Golden Declaration. The Debtor was informed that insider compensation should be

5   disclosed in the filed monthly operating reports. The Debtor fully disclosed Green's

6   compensation payments in its filed monthly operating reports, even specifically and

7   separately listing the payments to Green in a clear and obvious section on the monthly

8   operating reports. The monthly operating reports for the months of January 2020 and

9   February 2020 were attached as Exhibit "D" and Exhibit "E" respectively to the Motion.

10  Debtor's January 2020 monthly operating report shows on page 9 that Green was paid as

11  follows: a net amount of $5,411.61 on January 17, 2020, a net amount of $5,411.62 on

12  January 24, 2020 and a net amount of $5,411.61 on January 31, 2020. Furthermore,

13  Debtor's February monthly operating report shows on page 9 that Green was paid as

14  follows: a net amount of $5,411.61 on February 7, 2020, a net amount of $5,411.62 on

15  February 14, 2020, a net amount of $5,411.61 on February 21, 2020 and a net amount of

16  $5,444.61 on February 28, 2020.

17      After receiving notice of the Adversary Proceeding and AHAC's request for a

18  preliminary injunction and allegations of failing to disclose Green's payments, in an

19  abundance of caution the Debtor filed the Motion for Order Approving Debtor's Payment

20  of Bruce Green's Salary Pursuant to Debtor's Ordinary Course of Business

21  ("Compensation Motion") on April 9, 2020. The Compensation Motion fully outlines

22  Green's critical and substantial role in the Debtor, his long list of responsibilities with the

23  Debtor, and the structure of the compensation to be paid to Green. Specifically, the

24  Compensation Motion outlines that Green is not only the CEO, but the CFO, and

25  President of the Debtor. Furthermore, the Compensation Motion outlines that from

26  January through March of 2020, Green received significantly less weekly than he did prior

27  to the filing of the Case, and from March 2020 onwards, he will receive even less because

28  he has agreed to further reduce his post-petition salary. *See* ¶ 7 of Golden Declaration.

1269382.1

OPPOSITION

1  Furthermore, the Compensation Motion makes clear that the Debtor is run by Green and

2  the Debtor cannot operate successfully post-petition in the absence of Green.

3  Further, Debtor's counsel has discussed Green's compensation with AHAC's

4  counsel in order to come to a resolution, but AHAC has not sought to resolve the matter.

5  Debtor's counsel specifically asked counsel for AHAC for any additional facts it needed

6  with respect to Green's compensation, to which AHAC did not provide any additional facts

7  or information it required.  Debtor's counsel also inquired whether AHAC would agree to

8  any certain amount of compensation to be paid to Green, to which AHAC declined to

9  agree to any compensation to Green.  Last, Debtor's counsel offered to stipulate to a

10  continuance the hearing on the Motion so that the Estate could avoid the administrative

11  costs of filing this Opposition and the Compensation Motion in order to give AHAC more

12  time to determine what additional information it required but AHAC refused to stipulate to

13  a continuance. *See* ¶ 9 of Golden Declaration. As such, Debtor has sought an order of the

14  Court authorizing the compensation to Green.

15     **E.    Debtor's Statements Regarding Payment to Green**

16  The Motion incorrectly alleges significant wrongdoing by the Debtor and accuses

17  the Debtor of a "history of obfuscating required disclosure of financial information and

18  disobeying this Court's orders…" Motion, 7:4-5. Additionally, AHAC incorrectly accuses

19  the Debtor of making numerous assurances that the Debtor would not make insider

20  payments. For the sake of clarity of the record, the Debtor will address each of these

21  allegations in turn.

22     **1.    First Day Motions Hearing**

23  The Motion alleges that the Debtor stated that it would make no insider payments

24  to anyone at the hearing on the first day motions before the Central District. A partial

25  transcript of the hearing on the first day motions was attached to the Motion as Exhibit "A."

26  According to the transcript, Jeffrey Golden, counsel for the Debtor, stated "First, *with*

27  *respect to the request today*, we're not asking for - - Bruce Green (phonetic), who's

28  present in the courtroom, your Honor, who's the insider - - or the principal - - to get any

OPPOSITION

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

money. We'll be going through the normal process for compensations. We're not asking for any of that payroll to be authorized to him today."

Clearly, such a statement was made in the context of the payroll motion before the Court. Mr. Golden made clear that he was not requesting compensation to be paid to Mr. Green *with respect to the request* at issue before the Court, and that the normal process for insider compensation in the Central District would be followed if Green sought to be paid. No compensation was sought by Green while the case was pending in the Central District. The normal process for compensation in the Northern District was followed as explained in the Compensation Motion and reiterated herein. The other quoted sections of the transcript attached to the Motion as Exhibit "A" are similar. The crux is that the Debtor's reference to Green's salary was limited to the first day motions. Debtor wanted to make that clear to the Central District Court so that there was no ambiguity. There is simply no reading that would imply that the Debtor would never seek to pay Green. In fact, the final quote of Mr. Golden, on page 33 of the transcript on Exhibit "A" to the Motion, is cut off but seems to strongly imply that Mr. Golden was seeking approval to use cash collateral to pay some type of insider compensation. Certainly, no reasonable party would find Mr. Golden's comments at the first day motions hearing to be an affirmation that the Debtor would never seek to pay Green his salary. In fact, the Debtor did not make any payments to Green for his salary for more than 3 months after the hearing on the first day motions.

## 2.    Section 341(a) Meeting of Creditors

The Motion next asserts that Green "reasserted this position", i.e., he would not receive any compensation. The Motion attached a limited transcript from the Section 341(a) meeting of creditors ("Meeting of Creditors") as Exhibit "C" to the Motion. The only possibly relevant section is Mr. Golden stating that "… Mr. Green has indicated that during the reorganization, *at least this part*, he is not going to take compensation from the company." In fact, such statement was entirely true. The Meeting of Creditors took place on October 18, 2019. Green received no compensation for September 2019, October

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1   2019, November 2019, or December 2019. Mr. Golden was asserting that Green was not

2   intending to take compensation during *this part* of the reorganization, but again the

3   statement was limited in time. After transfer of the Case to the Northern District, Green

4   requested payment of his compensation on a significantly reduced basis. No action taken

5   by the Debtor has contradicted the statements at the Meeting of Creditors. Such

6   "evidence" by AHAC is merely an attempt to unfairly paint the Debtor before the Court, yet

7   such a situation is far from the truth. Green's voluntarily foregoing of a salary for the first

8   three and a half months of this case should not be used against him.

9                    **3.    Court's Orders**

10         To further unfairly prejudice the Court against the Debtor and Green, the Motion

11  incorrectly alleges that the Debtor has been consistently flaunting the Court's orders in

12  this case. First, the allegation is irrelevant to the Motion. Second, the Motion specifies the

13  Order Granting Emergency Motion for Order Authorizing Payment and Honoring of Pre-

14  Petition Payroll Obligations, entered on September 18, 2019 ("Payroll Order"), in the

15  above-captioned bankruptcy case, and attached such order as Exhibit "B" to the Motion.

16  The order states that:

17              Debtor is authorized to pay pre-petition employee wage and
            salary obligations owed by Debtor up to the priority limit in
18              Section 507(a)(4) of the United States Bankruptcy Code, and
            associated tax liability for the pre-petition payroll obligations,
19              provided however that the Debtor is not authorized to make
            any such payments to any independent contractors or
20              insiders of the Debtor as defined by 11 U.S.C. Section
            101(31).
21

22  The Payroll Order was made in the context of the first day motion authorizing payment of

23  pre-petition payroll obligations ("Payroll Motion") filed by the Debtor in the Central District.

24  Debtor did not seek to pay insider compensation to Green in the Payroll Motion.  No such

25  relief was sought through the Payroll Motion. The Debtor affirmed that it would not seek to

26  pay insiders absent following proper procedure for insider compensation as set forth in the

27  local rules of the Central District. The Order says nothing more than the Debtor is not

28  authorized to make payments to insiders as part of the Payroll Motion. Such language

1269382.1                                      7                                    OPPOSITION

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  was only added to the order at the behest of AHAC, and not because Debtor was seeking

2  such relief in the Payroll Motion.

3  In fact, AHAC cannot point to a single procedure *in the Bankruptcy Court for the*

4  *Northern District of California* by which the Debtor failed to abide. AHAC makes much of

5  the Debtor's "failure" to file a Notice of Insider Compensation which is required pursuant to

6  the local rules for the Bankruptcy Court for the Central District of California. Green was

7  never paid while the case was pending in the Central District. Green only began receiving

8  compensation after the case was transferred to the Northern District. AHAC makes a

9  specious argument, unsupported by *any* authority, legal or otherwise, that because the

10  case was originally pending in the Central District, the Notice of Insider Compensation

11  must have been filed, and failing to file it was a result of the Debtor's attempt to hide the

12  insider compensation. Notwithstanding the fact that Debtor disclosed Green's

13  compensation in all of the filed monthly operating reports, alerted the Office of the United

14  States Trustee, and alerted the Committee (of which AHAC is a member), AHAC

15  maintains its unfounded argument that Debtor did not follow proper procedure. The Case

16  is pending in the Northern District, and as such, Debtor must follow the local rules of the

17  Northern District and not the Central District. AHAC provides no legal basis for why Debtor

18  (only with respect to insider compensation) must abide by the local rules for a venue other

19  than the one in which the action is pending. Clearly that is not the correct outcome. As a

20  result, Debtor was not required to file a Notice of Insider Compensation as required in the

21  Central District. Rather, Debtor followed the procedures in the Northern District and gave

22  notice to the Office of the United States Trustee and the Committee and fully disclosed the

23  compensation through the filed monthly operating reports.

24

25  **III.    AHAC IS NOT ENTITLED TO A PRELIMINARY INJUNCTION**

26      **A.    Preliminary Injunction Standard**

27  Bankruptcy courts have employed two alternative approaches to provide injunctive

28  relief:  (1) pursuant to the court's equitable powers under 11 U.S.C. § 105(a), and

(2) pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7065, which applies Federal Rule of Civil Procedure ("F.R.C.P.") 65. *Rinard v. Positive Invs., Inc. (In re Rinard)*, 451 B.R. 12, 21-22 (Bankr. C.D. Cal. 2011). When requesting relief under F.R.B.P. 7065 and F.R.C.P. 65, or via section 105(a), the legal standards in the Ninth Circuit for the granting of a temporary restraining order or a preliminary injunction are identical. *See Rinard*, 451 B.R. at 22; *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. Cal. 2001) (where Court observed that the analysis of granting a preliminary injunction compared to a temporary restraining order are "substantially identical").

The traditional criteria for issuance of a temporary restraining order/preliminary injunction by a bankruptcy court involves consideration of four factors: (1) likelihood of success on the merits, (2) likelihood of irreparable injury to movants if the injunction is not granted, (3) a balance of the hardships favoring the movants, and (4) advancement of the public interest (only in certain cases*). See Owner-Operator Ind. Drivers Ass'n v. Swift Transp. Co.*, 367 F.3d 1108, 1111 (9th Cir. 2004); *see generally Hernandez v. Downey S&L Ass'n*, 2009 U.S. Dist. LEXIS 21495 (S.D. Cal. Mar. 17, 2009); *Rinard*, 451 B.R. at 22. As AHAC pointed out, the core element of injunctive relief in the federal courts is irreparable injury and inadequacy of legal remedies. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). AHAC has failed to prove that it is likely to succeed on the merits of its claim, and it has completely failed to identify *irreparable* harm.

**B.** **AHAC is Unlikely to Succeed on the Merits**

AHAC asserts that the Debtor is not allowed to pay Green's salary in the amounts disclosed in the Debtor's monthly operating reports pursuant to § 503(b)(1)(A). Debtor is not seeking to pay Green's salary pursuant to § 503(b)(1)(A). Rather, the Debtor's payment of Green's salary is an ordinary course of business payment. Furthermore, Green is absolutely entitled to an administrative claim for his work pursuant to § 503(b)(1)(A).

**1.** **Payments to Green Were in the Ordinary Course of Business**

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 9 of 36

The Debtor, as debtor-in-possession, has the authority to make payments in the ordinary course of business without notice or a hearing. Section 363(c)(1) states that:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). Section 1107 grants to a debtor in possession "all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter." As a result, Section 1107 of the Bankruptcy Code grants the Debtor the authority, pursuant to Section 363(c)(1), to enter into transactions in the ordinary course of business without notice or a hearing. The salary payments to Green are in the ordinary course of business, therefore the Debtor is authorized to make such payments absent notice or a hearing and absent court approval.

To determine whether payments are in the ordinary course of business, courts look to two tests, a "vertical" test and a "horizontal" test. The "vertical" test asks whether the transaction subjects creditors to economic risks different from those accepted at the time of contract with the debtor, and the "horizontal" test asks whether the transaction is the type that similar businesses engage in as part of their ordinary business operations. *In re Wonderwork, Inc.*, 611 B.R. 169 (Bankr. S.D.N.Y. 2020) (citing *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379 (2d Cir. 1997)). Compensation paid to the CEO of a debtor is generally ordinary course of business payments unless the compensation is truly outrageous or otherwise abnormal. *See In re Wonderwork, Inc.*, 611 B.R. 169.

The payments to Green satisfy both the "vertical" and "horizontal" tests. The payments to Green do not in any way subject the creditors of the Debtor to economic risks

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 10 of 36

different from those accepted at the time of contract with the Debtor. In fact, the payments to Green are significantly *less* than his historical salary[1]. Since Green has agreed to accept less than his historical salary, there is no prejudice, as a creditor doing business with the Debtor would assume the Debtor would pay its CEO, CFO, and President. Additionally, since the payments are even less than the historical payments to Green, the payments certainly pass the "vertical" test.

The payments additionally pass the "horizontal" test. In *Wonderwork*, the Court analyzed the payments to a CEO post-petition and found that, even though the CEO in that case was earning a "high" salary compared to other similar businesses at $475,000 per year (or $9,134.62 per week), it was within the parameters of similar CEOs. Here, there is little doubt that CEOs at similar businesses earn more than the $3,500 per week projected to be paid to Green.[2] In fact, this very business paid Green an average of $8,800 per week in the 8 years prior to the Petition Date. Force 10, Debtor's financial advisors in this Case, performed an analysis to determine the reasonableness of the payments to Green as salary payments. Adam Meislik ("Meislik") from Force 10 prepared two reports, a salary market approach report ("Salary Market Report") and a salary cost approach report ("Salary Cost Report"). The Salary Market Report is attached hereto as Exhibit "1" and the Salary Cost Report is attached hereto as Exhibit "2." *See* ¶ 6 of declaration of Adam Meislik attached hereto ("Meislik Declaration").

The Salary Market Report uses the market approach which is based on surveys by comparable companies, industries, and profitability. Pursuant to the Salary Market Report, Meislik concluded that a reasonable compensation for a person in Green's position is $342,655 annually, or approximately $6,598.52 per week. *See* ¶ 8 of Meislik Declaration.

---

[1] Mr. Green was earning on average $8,800.33 per week for the eight years prior to the filing of the bankruptcy case. From January 2020 through March 2020, Mr. Green was paid approximately $5,400 per week, or $3,400 less than he was historically making. Beginning April 1, 2020, Mr. Green began to receive only $3,500 per week, or more than $5,700 less than he was historically making.

[2] AHAC submits no evidence challenging the appropriateness of the amounts paid Green and it would be difficult to imagine any such evidence exists.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 11 of 36

The Salary Cost Report uses the cost approach which is a build-up based on roles and expertise. Pursuant to the Salary Cost Report, Meislik concluded that a reasonable compensation for a person in Green's position is $365,976 annually, or $7,038 per week. *See* ¶ 9 of Meislik Declaration. Therefore, the payments made to Green for his salary are entirely reasonable and pass the horizontal test. As a result, the payments to Green are ordinary course of business payments that the Debtor can make without requiring notice or a hearing.

Furthermore, the Debtor sought to abide by all procedures and requirements before this Court in disclosing the salary payments to Green. The Debtor sought for, and did not find, a Notice of Insider Compensation or analogue in this district. The Debtor notified the Office of the United States Trustee and the Committee of the insider compensation fully disclosed the compensation in the monthly operating reports.

### 2. Payments to Green Would be Authorized Pursuant to 11 U.S.C. § 503(b)(1)(A)

Throughout the Motion, AHAC alleges that the Debtor cannot establish that the payments to Green are actual, necessary costs of preserving the estate. It is unclear why AHAC believes the Debtor cannot so establish. In fact, AHAC may be in the very best position of all creditors to know that the Debtor *can* so establish. Upon reading the monthly operating reports filed by the Debtor, AHAC reached out to the Debtor for information relating to the payments to Green. In response, the Debtor sent an exhaustive list of duties performed by Green in his triple role as CEO, CFO, and President. Both pre-petition and post-petition, Debtor produced Green's W-2s that spanned over a decade so AHAC has been in possession of Green's salary history and understands that his present compensation is far less than his pre-petition salary.

Section 503(b)(1)(A)(i) specifies that allowed administrative expenses include actual, necessary costs and expenses of preserving the estate including "wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A)(i). Under the "reasonable value of services" standard, there is a

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 12 of 36

presumption that the contract terms and rate of a pre-petition contract represent the reasonable value of the services or goods provided under the contract. *NLRB v. Bildisco*, 465 U.S. 513 (1984); *In re Bethlehem Steel Corp.*, 291 B.R. 260 (Bankr. S.D.N.Y. 2003).

Green has provided and continues to provide valuable services to the Debtor throughout the bankruptcy case. As CEO, Green handles operations management, office management, sales management, account managers supervision, and liaison with unions. Relating to his role as CFO, Green manages contract accountants, including Force 10, maintains daily contact with TAB Bank and manages the line of credit of the Debtor, and manages in-house accounting staff. Additionally, Green manages staff downsizing and communicating with corporate clients regarding strategies and news relating to projects, a task with new significance in light of the massive effects of COVID-19 on the status of trade shows. Each of these tasks is essential to the Debtor's successful operation, and none of Green's tasks are irrelevant, inappropriate, or unnecessary.

Green earned on average approximately $8,800 per week in the eight years prior to the filing of the bankruptcy case. The payments to Green, for the months of January 2020 and February 2020, totaled approximately $5,400 per week. This lower amount is reflective of the Green's agreement to take a reduced salary, rather than Green's workload and duties, which have only increased due to his additional roles and responsibilities and the filing of the Case. The proposed payments to Green from March 1, 2020 are $3,500 per week. Such an amount is less than 40% of what Green historically earned from the business. Since Green's prepetition compensation is at the very least evidence of reasonableness, it is difficult to find how less than 40% of said compensation is an unreasonable amount to pay Green. There is little doubt that Green is integral to the Debtor. AHAC's arguments to the contrary (including stating that the Debtor is paying Green to sit at home – which is not based on any facts or evidence) are not well taken and simply untrue, not to mention intentionally disingenuous in light of the significant information provided to AHAC in response to AHAC's request for additional information relating to Green's work with the Debtor and AHAC's contact with Green throughout this

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

13

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 13 of 36

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Case. Green is working diligently for the Debtor, and has caused the Debtor to continue

2  operating successfully post-petition. Green's work has without a doubt been necessary for

3  preserving the estate, and his salary is a specifically allowed type of service pursuant to

4  Section 503(b)(1).

5      Since the payments to Green were authorized pursuant to the Bankruptcy Code,

6  allowing a debtor-in-possession to make ordinary course of business payments in

7  accordance with the procedures put in place by the Court, and because such payments

8  would easily have been allowed as administrative claims pursuant to § 503(b)(1)(A)(i) if

9  they were not ordinary course of business payments, AHAC cannot succeed on the merits

10  of its claims in the Adversary Proceeding. Therefore, there is no basis to grant an

11  injunction and the Motion should be denied.

12      **C.    AHAC Cannot Allege Irreparable Harm**

13      AHAC asserts that it will suffer irreparable harm because Green can take the

14  compensation and spend it as he wishes, and it would take a lawsuit to get the funds

15  back. Therefore, AHAC argues, no measure other than a preliminary injunction can

16  resolve this issue.

17      As AHAC asserted the core element of injunctive relief in the federal courts is

18  irreparable injury and inadequacy of legal remedies. *Weinberger v. Romero-Barcelo*, 456

19  U.S. 305, 312 (1982). AHAC asserts that it will suffer irreparable harm by being forced to

20  file a lawsuit against Green to recover the money and that it may be difficult to recover.

21  This is the sole basis for AHAC's argument that it will suffer irreparable harm.

22      Clearly this does not rise to the level of irreparable harm pursuant to the preliminary

23  injunction standard. Irreparable harm is harm "which cannot be repaired, retrieved, put

24  down again, atoned for … [T]he injury must be of a particular nature, so that

25  *compensation in money* cannot atone for it." *Graham v. Medical Mut. of Ohio*, 130 F.3d

26  293, 296 (7th Cir. 1997) (emphasis added). In *Nken*, the Supreme Court held that

27  removing an alien to their home country was not irreparable harm if the alien can continue

28  to pursue a petition for review. *See Nken v. Holder*, 556 U.S. 418 (2009). The Supreme

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 14 of 36

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Court reasoned that, since the alien has an opportunity to continue to litigate and attempt

2  to obtain the same result (citizenship and/or ability to stay in the country), then even

3  *removal from the country* is not considered to be irreparable harm.

4  Here, the only harm that could possibly occur is monetary, which is precisely the

5  type of harm that is reparable rather than irreparable. AHAC does not even argue that

6  there is any possible harm beyond being forced to incur additional attorneys' fees and

7  being forced to commence litigation.

8  Denying the Motion would not cause any such "irreparable harm" to AHAC. The

9  only harm possibly identified by AHAC is monetary, the type of harm *specifically*

10  contemplated to not be irreparable. Since AHAC have failed to identify any irreparable

11  harm, let alone the probability of any harm occurring if the Court does not issue a

12  preliminary injunction, the Court must deny the Motion.

13  **D.  The Balance of Hardships Favors Denial of the Motion**

14  AHAC asserts that the balance of hardships favors the granting of a preliminary

15  injunction because the most important issue is maximizing the Debtor's estate. The

16  Debtor agrees that the most important outcome is maximizing the Debtor's estate. AHAC

17  believes the best way to maximize the Debtor's estate is to ostracize and refuse to pay the

18  Debtor's CEO, CFO, and President while the Debtor is operating successfully post-

19  petition. AHAC believes that the best way to maximize the Debtor's estate is to file a

20  complaint and motion for injunctive relief against the Debtor to prevent the Debtor from

21  paying its CEO, CFO, and President who is seeking compensation less than 40% of his

22  pre-petition salary. AHAC's arguments are tenuous at best as they ignore the various

23  roles and responsibilities of Green. The Debtor, on the other hand, believes that paying its

24  CEO, CFO, and President at a greatly reduced salary, to continue operating a successful

25  post-petition business will best maximize the Debtor's estate. Furthermore, the Debtor

26  cannot fathom how responding to the Adversary Proceeding and the Motion is maximizing

27  the Debtor's estate. The Debtor attempted to follow all procedures with respect to Green's

28  compensation, and attempted to work with AHAC to explain the significance and

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 15 of 36

importance of Green's work. AHAC has not brought this Motion for the collective good of creditors of the Case. Indeed, such litigiousness reveals that AHAC is incredibly disingenuous and will battle the Debtor at every step of the Case. Granting the injunction will at best lead to additional litigation, and at worst lead to the departure of Green, which would surely lead to the collapse of the Debtor, a business that is managing to successfully operate post-petition. The balance of hardships clearly favors the Debtor and, as a result, the Motion should be denied.

### E. Public Interest Favors Denial of the Motion

AHAC has not shown that the public interest favors granting the Motion. The Debtor has complied with the applicable relevant procedures regarding the payment of Green's salary. Such payments are ordinary course of business payments. There is no benefit to the public interest to force the Debtor to comply with the local rules of the Central District when the Case is pending in the Northern District of California. Debtor has sought to abide by this Court's local rules and procedures in paying its CEO, CFO, and President a significantly reduced salary. Public interest strongly disfavors that the misrepresentations and disingenuous arguments made by AHAC throughout the Motion be put to an end. The public interest does not favor granting the Motion.

### IV. CONCLUSION

AHAC has failed to prove that a preliminary junction is appropriate. AHAC has not proven that it is likely succeed on the merits of its claim. AHAC has not, cannot, and will not be able to allege that any actual irreparable (nonmonetary) injury will befall it as a result of the salary payments to Green. The balance of hardships and the public interest favor denial of the Motion. The payments to Green were authorized as ordinary course of business payments, and even if they are not, they would certainly be allowed as an administrative claim for the work performed by Green. Based upon the foregoing, the Debtor respectfully requests that the Court enter an order:

    1.     Denying the Motion;

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 16 of 36



1      2.     Granting such other and further relief as the Court may deem just and

2 appropriate.

3 Dated: April 16, 2020                 WEILAND GOLDEN GOODRICH LLP

4

5                               By:   */s/ Jeffrey I. Golden*

6                                    JEFFREY I. GOLDEN
                                   Attorneys for Debtor and
                                   Debtor-in-Possession,

7                                    Coastal International, Inc.

8

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

## DECLARATION OF JEFFREY I. GOLDEN

I, Jeffrey I. Golden, declare as follows:

1.      I am an attorney in the law firm Weiland Golden Goodrich LLP ("Firm"), attorneys of record for Coastal International, Inc., debtor and debtor-in-possession ("Debtor"). The following is within my personal knowledge, and if called upon as a witness, I could and would testify competently with respect thereto. I am submitting this declaration in support of the *Opposition to Plaintiff's Motion for Preliminary Injunction* ("Opposition"). All capitalized terms have the same meaning or definition as the capitalized terms in the Opposition.

2.      The Debtor commenced the Case under chapter 11 of the Bankruptcy Code on September 15, 2019 in the United States Bankruptcy Court for the Central District of California, Santa Ana Division. The Debtor has continued operating and manages its business as a debtor-in-possession.

3.      On December 30, 2019, the Case was transferred to the Bankruptcy Court for the Northern District of California.

4.      On April 2, 2020, AHAC commenced an adversary proceeding against the Debtor seeking *inter alia* disgorgement of any and all amounts paid to Green by the Debtor, and an injunction against the Debtor from paying any salary to Green in the future. On the same day, AHAC filed the motion for preliminary injunction.

5.      The Debtor operates post-petition and its filed monthly operating reports indicates that the business has operated successfully post-petition.

6.      Bruce Green did not receive a salary from the Petition Date through December 31, 2019. The Debtor then began paying Green a salary beginning January 1, 2020.

7.      The Debtor's monthly operating reports filed with the Court, and attached to the Motion disclose and outline the payments to Green. In January 2020 and in February 2020, Green agreed to receive compensation significantly less than his pre-petition salary.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 18 of 36

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Green further reduced his salary to approximately $3,500 per week beginning March,

2  2020.

3       8.     In an effort to follow proper procedure related to compensation of insiders in

4  the Northern District of California, my office contacted the office for the United States

5  Trustee for the Northern District of California.  We were advised that the appropriate

6  procedure in the Northern District was to disclose such payments in the monthly operating

7  reports, which the Debtor has done.  My office also disclosed Green's compensation to

8  the Committee (of which AHAC is a member).

9       9.     Before and after receiving AHAC's adversary complaint and the Motion, I

10  met and conferred with its counsel to attempt to resolve the matter. I exchanged

11  telephone calls and emails with Mr. Lerner. In those exchanges I provided information

12  regarding Green's duties and salary history. I also questioned whether there was a salary

13  for Green to which AHAC would consent. I received no response. I also discussed the

14  ideal of a continuance of the hearing on the Motion in order to give the parties time to

15  resolve the compensation issue out of Court, but counsel for AHAC would not agree to

16  continue the hearing on the Motion.

17       I declare under penalty of perjury that the foregoing is true and correct.

18       Executed on this 16th day of April, 2020, at Costa Mesa, California.

19

20                     */s/ Jeffrey I. Golden*
                   JEFFREY I. GOLDEN

21

22

23

24

25

26

27

28

1269382.1                          19                      OPPOSITION

I, Adam Meislik, declare as follows:

1.      Except as otherwise stated, I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath. I am submitting this declaration in support of the *Opposition to Plaintiff's Motion for Preliminary Injunction* ("Opposition").  All capitalized terms have the same meaning or definition as the capitalized terms in the Opposition.

2.      I am a member of Force Ten Partners LLC ("Force 10"), with offices located at 20341 SW Birch Street, Suite 220, Newport Beach, California. Force 10 is an advisory firm that specializes in financial and operational corporate restructuring, valuation, forensic accounting, complex litigation support, and computations involved in court proceeding and dispute resolution. Force 10 serves individual chapter 11 debtors, middle-market companies, as well as their creditors, stakeholders and professionals in roles including financial advisor, interim manager, fiduciary services, expert witness, financier and M&A advisor.

3.      Force 10 was retained by the Debtor to serve as the Debtor's financial advisors in connection with this chapter 11 case, which employment was authorized by the Court by order entered on January 24, 2020.

4.      I have been involved for over twenty-five years in the restructuring and corporate finance sector, serving various roles, including Financial Advisor, Investment banker, CRO, Fiduciary and Expert Witness. Prior to forming Force 10, I served as Co-President, Chief Compliance Officer for GlassRatner Securities, LLC (2014-2016) and Senior Managing Director for GlassRatner (2012-2016) and, prior to that was a Principal at XRoads Solutions Group, LLC (2009-2012), Managing Director in the Investment Banking Group of Salem Partners LLC (2006-2007), Executive Director and Director in the Investment Banking Group of CIBC World Markets (1996-2006), and Analyst and Associate in the Corporate Financing Group of Jeffries & Company, Inc. (1993-1995). I

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

obtained my Bachelor of Science in Management (Finance) from Tulane University, Freeman School of Business in 1993.

5. During my career, I have worked with companies in numerous sectors, bank lenders and other secured and unsecured creditors, buyers, sellers, bankruptcy counsel and litigators, all in the context of workouts, insolvency proceedings, fund raising, M&A, and litigation. I have provided expert testimony concerning transactions, feasibility, intangible/intellectual assets, valuation, solvency, and reasonably equivalent value issues. I have been involved in advising, structuring, and executing in excess of 100 mergers, acquisitions, capital transactions restructurings, and litigation support assignments.

6. I have evaluated the reasonableness of the payments made to Bruce Green as described in this Opposition. In doing so, I have prepared two reports, a salary market approach report ("Salary Market Report") and a salary cost approach report ("Salary Cost Report"). The Salary Market Report is attached hereto as Exhibit "1" and the Salary Cost Report is attached hereto as Exhibit "2."

7. I used the industry standard tool called RCReports.

8. The Salary Market Report uses the market approach. The market approach is based on surveys by comparable companies, industries, and profitability. Pursuant to the Salary Market Report, I concluded that a reasonable compensation for a person in Bruce Green's position is $342,655 annually, or approximately $6,589.52 per week.

9. The Salary Cost Report uses the cost approach. The cost approach is a build-up based on roles and expertise. Pursuant to the Salary Cost Report, I concluded that a reasonable compensation or a person in Bruce Green's position is $365,976 annually, or approximately $7,038 per week.

10. As a result, I believe that the payments to Bruce Green as outlined in the Opposition are reasonable salary payments for someone in Bruce Green's position.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 21 of 36

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed on this 16th day of April, 2020, at Irvine, California.

3    _____

4    ADAM MEISLIK

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 22 of 36

# EXHIBIT 1

# Force Ten Partners

## 2019 Report for Bruce Gordon of Coastal Industries

## Your estimated annual Reasonable Compensation: $342,655

Thank you for entrusting Adam Meislik of Force Ten Partners with your Reasonable Compensation analysis. This report provides a reasonable estimate of the value of services rendered to your company based on the duties and responsibilities that you perform annually. The valuation of most businesses requires the owner(s) and key managers to have their compensation *Normalized*. Reasonable Compensation is defined as "The hypothetical replacement cost of an owner or key manager of a business."

Your suggested salary range: $277,034 to $398,403 with a suggested salary of $342,655 was determined to be Reasonable Compensation based on your role in the company, industry, size of the business, time devoted to the business, your experience and location. Any wage selected within the suggested range or expanded geographical area(s) is acceptable and within a 90% confidence interval.



|  | Low | High | Suggested |
|---|---|---|---|
| **California** | 308,349 | 398,403 | **342,655** |
| **National** | 277,034 | 357,942 | **307,856** |

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 1/4*

Case: 20-03009    Doc# 9    Filed: 04/16/20    Entered: 04/16/20 21:41:26    Page 24 of 36
EXHIBIT 01    PAGE 234

# Force Ten Partners

# Business Summary:

| | |
|---:|:---|
| Calculated for: | Bruce Gordon |
| Company: | Coastal Industries |
| Interview completed: | 2020-04-16 13:42:50 |
| Report calendar year: | 2019 |
| NAICS industry: | 561000 - Administrative and Support Services |
| State: | California |
| Occupation: | Chief Executives* |
| Number of Employees (FTE): | 75-150 |
| Adjusted Gross Profit: | 1m-5m** |
| Business Performance vs. Peers: | Average |
| Owner Experience and/or Proficiency Level: | High |
| Time Dedicated to the Business: | Full time |

* Chief Executives - Determine and formulate policies and provide overall directionof companies or private and public sector organizations within guidelines set up by a board of directors or similar governing body. Plan, direct, or coordinate operational activities at the highest level of management with the help of subordinate executives and staff managers.

** Adjusted Gross Profit is gross revenue less the direct cost of producing this income. The direct cost of producing income is all expenses that have a one to one relationship to producing income. This concept is like but not identical to grossprofit.

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 2/4*

# Force Ten Partners

## How was my "Annual Salary" or "Reasonable Compensation" calculated?

Force Ten Partners relies on data provided by Reasonable Compensation Reports, Inc., Bureau of Labor Statistics and U.S. Census data to calculate a concise, independent, unbiased, Reasonable Compensation figure.

This report determines Reasonable Compensation based on your company's industry, size and performance and your role, experience and time devoted to the company, generating an annual salary that would be reasonable to "replace" yourself within your business.

Your annual salary or Reasonable Compensation represents an estimate of the amount it would cost to "replace" you, based on:

- Your answers to our interview
- Bureau of Labor Statistics data
- Census data
- Reasonable Compensation Reports data

Your Reasonable Compensation figure includes taxable Medicare wages & bonuses, healthcare and flexible spending accounts (FSA). It does not include non-taxable fringe benefits such as vehicle or vehicle allowance, stock options, company loans and other items not reported on a W-2 as taxable compensation.

Your actual replacement salary could vary considerably from our estimate, especially if the information you provided differs from your actual duties, industry and size.

## Methodology

This report uses the Market Approach to determine a Reasonable Compensation figure. The Market Approach compares the business owner's compensation to compensation within the industry. The market approach focuses as much as possible on the owner's business and the specific position being analyzed (often the CEO or General Manager who also owns the business). The question to be answered is: How much compensation would be paid for this same position, held by a non-owner in an arms-length employment relationship at a similar company?

The Market Approach generally works best for medium and large businesses where the business owner provides only one duty: management of the business.

For more information on Methodologies:

- Job Aid for IRS Valuation Professionals
- Reasonable Compensation Reports, Inc. Methodology Report (available upon request)

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 3/4*

Case: 20-03009    Doc# 9    Filed EXHIBIT 1 04/16/20 21:41:26    Page 26 of 36
PAGE 25

# Force Ten Partners

## Other considerations before deciding on a final Reasonable Compensation figure

For the majority of businesses owners (and key managers), the Reasonable Compensation figure calculated in this report should not require adjustments. However there are circumstances, rules and situations Force Ten Partners may take into consideration before recommending a final Reasonable Compensation figure. The list below is not exhaustive and Force Ten Partners may make adjustments for circumstances and situations not listed.

- Compensation of Non-Owner Employees
- Salary History
- Travel Requirements
- Personal Guarantee of Debt
- Key Relationships and/or Contracts
- Financial Condition of Company
- Distribution History

The courts have used a variety of factors to "stress test" Reasonable Compensation figures. Four well recognized lists of factors are below. Force Ten Partners may stress test your Reasonable Compensation figure against some or all of the factors used by the courts and the IRS and recommend adjustments

1. The IRS Nine Factors Considered by Tax Courts: IRS Fact Sheet 2008-25
2. The Tax Court's Five–Factor Test: LabelGraphics, Inc. v. Commissioner, T.C. Memo 1998–343 (Sept. 28, 1998)
3. The Tax Court's Ten–Factor Test: Brewer Quality Homes, Inc. v. Commissioner, T.C. Memo 2003-200 (July 10, 2003)
4. Summary of Court Factors used to "Stress Test" Reasonable Compensation Figures: Summary

Additional Resources:

- Job Aid for IRS Valuation Professionals
- Reasonable Compensation: Application and Analysis for Appraisal, Tax and Management Purposes. By Ronald L. Seigneur and Kevin R. Yeanoplos

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*
*Page 4/4*

# EXHIBIT 2

# Force Ten Partners

## 2019 Report for Bruce Gordon of Coastal Industries

## Your estimated annual Reasonable Compensation: $365,976

Thank you for entrusting Adam Meislik of Force Ten Partners with your Reasonable Compensation analysis. This report provides a reasonable estimate of the value of services rendered to your company based on the duties and responsibilities that you perform annually. The valuation of most businesses requires the owner(s) and key managers to have their compensation *Normalized*. Reasonable Compensation is defined as "The hypothetical replacement cost of an owner or key manager of a business".

The calculated salary of **$365,976** was determined to be Reasonable Compensation based on the type of work performed, the skill level of the work performed and the number of hours the work is performed annually. You told us that you work **2340** hours per year in **Marin County, CA**. Our analysis indicates the annual salary of $365,976 would be a reasonable cost to hire employee(s) to perform the duties and responsibilities that you currently perform.



*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

Case: 20-03009   Doc# 9   Filed EXHIBIT 2   ENTERED 04/16/20 21:41:26   Page 29 of 36
PAGE 27

# Force Ten Partners

### Category: Management - Supervision
50% of total hours   -   1,170 hours per year   -   83.45% of total compensation

| Task | Proficiency | % of Category | % of Total Hours | Hours per Year | Hourly Wage | Annual Wages |
|------|-------------|---------------|------------------|----------------|-------------|--------------|
| **Chief Executives** | | | | | | |
| | High | 100% | 50% | 1,170.0 | $ 261.03 | $ 305,405 |

### Category: My Business
50% of total hours   -   1,170 hours per year   -   16.55% of total compensation

| Task | Proficiency | % of Category | % of Total Hours | Hours per Year | Hourly Wage | Annual Wages |
|------|-------------|---------------|------------------|----------------|-------------|--------------|
| **Convention Services Manager** | | | | | | |
| | High | 100% | 50% | 1,170.0 | $ 51.77 | $ 60,571 |

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 2/6*

# Force Ten Partners

## 2019 Report for Bruce Gordon of Coastal Industries

**Business Summary:**

|  |  |
|---|---|
| Calculated for: | Bruce Gordon |
| Company: | Coastal Industries |
| Interview completed: | 2020-04-16 13:46:41 |
| Report calendar year: | 2019 |
| Location: | Marin County, CA |
| Hours worked: | 2340 |

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 3/6*

Case: 20-03009    Doc# 9    Filed EXHIBIT 2    ENTERED 04/16/20 21:41:26    Page 31 of 36

# Force Ten Partners

## How was my "Annual Salary" or "Reasonable Compensation" calculated?

Force Ten Partners relies on data provided by Reasonable Compensation Reports, Inc., Bureau of Labor Statistics and U.S. Census data to calculate a concise, independent, unbiased, Reasonable Compensation figure.

This report blends and weights the duties and responsibilities you perform annually in eight common categories with the duties and responsibilities you perform specific to your business generating an annual salary that would be reasonable to "replace" you within your company.

Your annual salary or Reasonable Compensation represents an estimate of the amount it would cost to "replace" you, based on:

- Your answers to our interview
- Bureau of Labor Statistics data
- Census data
- Reasonable Compensation Reports data

Your Reasonable Compensation figure includes taxable Medicare wages & bonuses, healthcare and flexible spending accounts (FSA). It does not include non-taxable fringe benefits such as vehicle or vehicle allowance, stock options, company loans and other items not reported on a W-2 as taxable compensation.

Your actual replacement salary could vary considerably from our estimate, especially if the information you provided differs from your actual duties and responsibilities.

## Methodology

This report uses the Cost Approach to determine a Reasonable Compensation figure. The Cost Approach takes into consideration all the tasks a business owner provides to the company, such as administration, accounting, marketing, purchasing etc. (also referred to as the Many Hats Approach).

The Cost Approach breaks down the time spent by the owner into the various tasks performed; wage levels are assigned for each task based on the owner's proficiency, and then added back together to obtain a hypothetical Replacement Cost for the owner.

The Cost approach is most accurate when used to determine Reasonable Compensation for owners of a closely-held business where the owner performs multiple job duties (wears many hats).

For more information on Methodologies:

- Job Aid for IRS Valuation Professionals
- Reasonable Compensation Reports Methodology Report (available upon request)

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*
*Page 4/6*

Case: 20-03009   Doc# 9   Filed EXHIBIT 2 ERASED 04/16/20 21:41:26   Page 32 of 36

# Force Ten Partners

## 2019 Report for Bruce Gordon of Coastal Industries

### Other considerations before deciding on a final Reasonable Compensation figure

For the majority of businesses owners (and key managers), the Reasonable Compensation figure calculated in this report should not require adjustments. However there are circumstances, rules and situations Force Ten Partners may take into consideration before recommending a final reasonable compensation figure. The list below is not exhaustive and Force Ten Partners may make adjustments for circumstances and situations not listed.

- Compensation of Non-Owner Employees
- Salary History
- Travel Requirements
- Personal Guarantee of Debt
- Key Relationships and/or Contracts
- Financial Condition of Company
- Distribution History

The courts have used a variety of factors to "stress test" Reasonable Compensation figures. Four well recognized lists of factors are below. Force Ten Partners may stress test your Reasonable Compensation figure against some or all of the factors used by the courts and the IRS and recommend adjustments.

1. The IRS Nine Factors Considered by Tax Courts: IRS Fact Sheet 2008-25
2. The Tax Court's Five–Factor Test: LabelGraphics, Inc. v. Commissioner, T.C. Memo 1998–343 (Sept. 28, 1998)
3. The Tax Court's Ten–Factor Test: Brewer Quality Homes, Inc. v. Commissioner, T.C. Memo 2003-200 (July 10, 2003)
4. Summary of Court Factors used to "Stress Test" Reasonable Compensation Figures: Summary

Additional Resources:

- Job Aid for IRS Valuation Professionals
- Reasonable Compensation: Application and Analysis for Appraisal, Tax and Management Purposes. By Ronald L. Seigneur and Kevin R. Yeanoplos

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 5/6*

Case: 20-03009   Doc# 9   Filed: 04/16/20   Entered: 04/16/20 21:41:26   Page 33 of 36
EXHIBIT 2   PAGE 31

# Force Ten Partners

### Appendix A - Descriptions of Tasks Selected

**Chief Executives**
Determine and formulate policies and provide overall direction of companies or private and public sector organizations within guidelines set up by a board of directors or similar governing body. Plan, direct, or coordinate operational activities at the highest level of management with the help of subordinate executives and staff managers. May include extensive travel.

**Convention Services Manager**
Coordinate activities of staff, convention personnel, or clients to make arrangements for group meetings, events, or conventions.

*Annual Salary and Reasonable Compensation are used interchangeably in this report.*
*All salary and reasonable compensation figures are expressed annually and in U.S. dollars.*

*Page 6/6*

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 650 Town Center Drive, Suite 600, Costa Mesa, California 92626.

On April 16, 2020, I served the within document(s) described as:

**Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction; Memorandum of Points of Points and Authorities in Support Thereof; Declarations of Jeffrey I. Golden and Adam Meislik in Support Thereof**

on the interested parties in this action as stated on the attached mailing list.

[X]  **(BY THE COURT VIA NOTICE OF ELECTRONIC FILING [NEF])** The foregoing document(s) will be served by the court via NEF and hyperlink to the document. On April 16, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive the NEF transmission at the email addresses stated on the attached list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 16, 2020, at Costa Mesa, California.

_____          _____
Victoria Rosales                                              (Signature)
(Type or print name)

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1

## <u>SERVICE LIST</u>

2  **BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

3  - **Douglas Harris**     douglas.harris@alston.com, douglas.harris@duke.edu

4  - **Leib Lerner**     leib.lerner@alston.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28